**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ APR 0 6 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

UKP HOLDINGS, INC.,

        Plaintiff,

    - against -

UNITED STATES OF AMERICA,

        Defendant.

------------------------------------------------------- x

**MEMORANDUM & ORDER**

15 CV 6431 (RJD) (RLM)

DEARIE, District Judge

    Plaintiff UKP Holdings, Inc. (UKP), an investment holding company, seeks a tax refund of $3,237,075 on its 2005 taxes, based on its attempt to carry back its 2008 capital losses to a prior tax year. UKP and the Government filed cross-motions for summary judgment. See Plaintiff Mem. in Supp. of Mot. for Summ. J. ("Plaintiff Mem.") (ECF No. 31); Gov't Mem. in Supp. of Mot. for Summ. J. ("Gov't Mem.") (ECF No. 35-1). The parties agree that UKP failed to timely file a formal tax refund claim. See 26 U.S.C. § 7422(a) (formal claim typically a jurisdictional requirement). They disagree as to whether UKP filed a valid informal refund claim. See United States v. Kales, 314 U.S. 186, 194 (1941). UKP asserts that the Form 1139 ("Corporation Application for Tentative Refund") that it submitted to the Internal Revenue Service (IRS), coupled with communications with IRS personnel, all of which requested a carryback of UKP's 2008 losses back to 2007, constitute a valid informal refund claim. The Government asserts that UKP's interactions with the IRS do not amount to a valid informal refund claim, because UKP failed to request a refund for the proper tax year, 2005. See 26 U.S.C. § 6551(D)(2)(a). We agree with the Government that UKP failed to file a valid informal

refund claim and that we therefore lack subject matter jurisdiction. The Government's motion for summary judgment is granted. UKP's cross-motion is denied.

BACKGROUND

The facts underlying this case are almost entirely agreed upon by the parties. Nevertheless, because of the highly technical nature of the tax regulations and timeliness requirements at issue, we outline the relevant chronology here.

On February 17, 2010, UKP filed a federal income tax return on Form 1120 for 2007 and 2008. UKP Rule 56.1 Stmt. ("UKP 56.1"), ECF No. 30, ¶ 2; Galler Aff. ¶ 5, Ex. 2. It reported $11,302,855 in capital losses for 2008. UKP 56.1 ¶ 2. UKP simultaneously filed a Form 1139 ("Corporate Application for a Tentative Refund") indicating that it sought to carry its 2008 losses back to 2007. Id. ¶¶ 2, 6, 7. But UKP made a critical mistake: though it was required by statute to carry its losses back to the 2005 tax year, it requested to carry them back to 2007. See UKP 56.1 ¶ 7; see also 26 U.S.C. § 1212(a)(1)(A), (C) (a net capital loss shall be carried back to "each of the 3 taxable years preceding the loss year," and entire loss for any tax year "shall be carried to the earliest of the taxable years to which any such loss may be carried"). UKP also failed to file its Form 1139 within one year of the close of the relevant loss year, 2008, as is required by 26 U.S.C. § 6411(a). See UKP 56.1 ¶ 2.

On March 18, 2010, the IRS returned UKP's Form 1139. UKP 56.1 ¶ 8. The IRS explained that it could not review the form until UKP's 2007 and 2008 tax returns were processed. UKP 56.1 ¶ 8; Galler Aff. ¶ 6, Ex. 3. Though the IRS did not identify any error in UKP's tentative carryback request (i.e. that it was untimely and reflected a carryback of 2008 losses to the wrong year), the IRS directed UKP to refile its application in four to six weeks. UKP 56.1 ¶ 8; Galler Aff. Ex. 3. UKP failed to refile its refund application. UKP 56.1 ¶ 9;

2

Galler Aff. ¶ 6. From November to May 2011, Linda Galler, UKP's attorney, and IRS Revenue

Officer Michael S. Martin, the officer assigned to collect UKP's taxes, engaged in a series of

communications, including:

- (1) A November 9, 2010 phone call, discussing Ms. Galler's role as UKP's attorney and that she needed to obtain a Power of Attorney Form. UKP 56.1 ¶¶ 12-13; Galler Aff. ¶ 8.

- (2) A letter dated January 29, 2011 from the IRS, notifying UKP of a tax lien and requesting payment of taxes for 2007 and 2008. UKP 56.1 ¶ 14; Galler Aff. ¶ 9.

- (3) A March 4, 2011 phone call, Officer Martin's notes from which state that the IRS returned UKP's refund application and that UKP had "to wait so many weeks after the original returns are processed to file" its refund request. UKP 56.1 ¶¶ 16-17; Cooper Decl. Ex. D, USA 0016-17. Officer Martin's notes reflect some discussion about a 2008 carryback to the 2007 tax year. UKP 56.1 ¶¶ 16-17; Cooper Decl. Ex. D at 45 (Officer Martin "requested to have th[e] information [Ms. Galler conveyed] sent to my office…to [determine] whether these statements are correct."). Officer Martin also explained that Ms. Galler "stated that UKP intended that the 2008 capital losses be carried back to 2007." Martin Decl., ECF No. 35-3, ¶ 2.

- (4) A letter dated March 10, 2011 from Ms. Galler to Officer Martin, attaching UKP's Form 1139 and reiterating UKP's intent to carry back its 2008 losses to 2007. UKP 56.1 ¶¶ 18-19; Plaintiff Mem., ECF No. 31, at 18; Galler Aff. ¶ 11, Ex. 4; and

- (5) An early May 2011 conversation in which Officer Martin told Ms. Galler that he would submit UKP's Form 1139 to the IRS for processing. UKP 56.1 ¶ 21; Galler Aff. ¶ 15; see also Martin Decl. ECF No. 35-3, ¶ 2 (Officer Martin and Ms. Galler discussed "the holding off of filing amended returns" to give the IRS time to process its Form 1139."). Officer Martin also said that there would likely be an audit by the Congressional Joint Committee on Taxation "– a long process that could not be accelerated." UKP 56.1 ¶ 21; Galler Aff. ¶¶ 12-13.

UKP claims that in Ms. Galler's early May 2011 conversation with Officer Martin,

Officer Martin informed Ms. Galler that UKP's Form 1139 "would effectuate the carryback of

UKP's 2008 losses…[and] that UKP did not need to file amended returns." See UKP 56.1 ¶ 21;

Galler Aff. ¶¶ 12-13; Plaintiff Mem. in Opp'n to Gov't Mot. for Summ. J. ("Plaintiff Mem. in

Opp'n"), ECF No. 37, at 5. The Government disputes this assertion, and there is no such

notation in Officer Martin's file. See Gov't Response to UKP 56.1, ECF No. 35-5, ¶ 21; see also

Martin Decl., ECF No. 35-3, ¶ 2 ("At no time did I...ever promise any UKP representative that the...[carryback to 2007] would be allowed).

Finally, on May 18, 2011, Officer Martin submitted UKP's Form 1139 to the IRS for processing using Form 3870 ("Request for Adjustment"). UKP 56.1 ¶¶ 23-27; see also Martin Decl., ECF No. 35-3, ¶¶ 2-3. He attached his correspondence with Ms. Galler. UKP 56.1 ¶¶ 25-27; Martin Decl. ¶ 3. UKP explains that Officer Martin "filed the Form 1139 to carry back losses to the wrong year...[and that in] complete disregard of the Internal Revenue Manual ("IRM") procedure" he failed to advise Ms. Galler that UKP's Form 1139 was filed after the statutory deadline. Plaintiff Mem. in Opp'n, ECF No. 37, at 6. Almost two years passed before UKP received a response from the IRS as to its Form 1139. UKP 56.1 ¶¶ 35-38; Galler Aff. ¶ 16. In the meantime, on February 4, 2013, the IRS sent UKP a notice of its intent to levy taxes owed for 2011. UKP 56.1 ¶ 39; Galler Aff. ¶ 18, Ex. 6. UKP's accountant, Amber Williams, responded that UKP had not paid its 2011 taxes because it expected a refund from its 2008 losses that it could eventually apply to its 2011 taxes. UKP 56.1 ¶¶ 40-42; Galler Aff. ¶ 19, Ex. 7). In response, in a March 8, 2013 letter, the IRS notified UKP that its request for a tentative refund for 2007 was denied. UKP 56.1 ¶¶ 41-43; Galler Aff. ¶ 19, Ex. 7. The denial was based on two errors related to UKP's Form 1139: (1) it was filed on February 17, 2010, more than a year after the close of the loss year, 2008, in violation of 26 U.S.C. § 6411(a) and (2) it requested a carryback of 2008 losses to 2007, inconsistent with 26 U.S.C. § 1212(a)(1), which requires that such losses first be carried back "to the earliest of the taxable years to which such loss may be carried"—in this case, three years, to 2005. See UKP 56.1 ¶¶ 44-46; Gov't 56.1 ¶¶ 12-13.[1] At that time, the IRS directed UKP to file amended returns for 2005 through 2008 to "protect [its]

---

[1] The March 8, 2013 letter discussed the Form 1139 UKP filed and received back from the IRS in 2010, but not the Form 1139 that Officer Martin forwarded to the IRS for processing in May 2011. UKP 56.1 ¶ 44; Galler Aff. Ex. 7.

interests." UKP 56.1 ¶ 46; Galler Aff. Ex. 7. UKP did not, and offers no explanation for its failure to do so. UKP alleges that on May 2, 2013, Ms. Galler was informed by IRS Revenue Officer Theresa Henkin that UKP's 2008 carryback claim was denied on July 27, 2011. UKP 56.1 ¶ 47; Galler Aff. ¶ 21. The Government disputes this, proffering a statement from Officer Henkin that as of July 27, 2011, UKP's Form 1139 was merely being processed. Gov't Resp. to UKP 56.1, ECF No. 35-4, ¶ 35; ECF No. 35-5, Ex. 1 (Decl. of Teresa Henkin) ¶¶ 10-11 (Henkin's official notes "indicate that [she] had a conversation with Ms. Galler on May 2, 2013, but…only that [she] advised her to [] pay the outstanding balances and wait for [UKP's] claim to be resolved or file a new claim after full payment is made."); UKP 56.1 ¶ 36, Galler Aff. ¶ 24, Ex. 8.

On July 2, 2013, Ms. Galler discussed UKP's refund request with IRS Appeals Settlement Officer Marilyn Matthews, who informed her that UKP's accounts for 2007 and 2008 were "closed" and put in "non-collectible status." UKP 56.1 ¶¶ 49-50; Galler Aff. ¶ 26. Officer Matthews advised Ms. Galler to contact the IRS Taxpayer Advocate Service to pay UKP's 2011 taxes and file amended returns for all years affected by the refund request. UKP 56.1 ¶ 51; Galler Aff. ¶ 26. UKP filed Form 1120X ("Amended Corporate Income Tax Return") for 2005 through 2011 on August 27, 2013. UKP 56.1 ¶ 52; Galler Aff. ¶ 27. The statute of limitations on UKP's refund claim for 2005, based on its loss carryback from 2008, had long since expired on September 15, 2012.[2] See 26 U.S.C. § 6551(d)(2)(A).

On November 27, 2013, the IRS rejected UKP's request as untimely. UKP 56.1 ¶ 55; Galler Aff. ¶ 32, Ex. 11. UKP's formal protest of this rejection was denied by the IRS on June 1,

---

[2] UKP received an extension for filing its 2008 tax returns until September 15, 2009. See Gov't Mem. in Supp. of Summ. J., ECF No. 35-1, at 1 (citing Plaintiff Resp. to Gov't First Request for Adm. (Gov't Ex. 1, ECF No. 35-1, at 1)). UKP was required to file a 2008 carryback refund claim within three years of that date. See 26 U.S.C. § 6511(d)(2)(A).

2015. UKP 56.1 ¶¶ 56-57. UKP asserts that it was not notified of the denial of its appeal until September 15, 2015. UKP 56.1 ¶ 57; Galler Aff. ¶ 34, Ex. 13. This suit followed.

DISCUSSION

## A. Summary Judgment

Summary judgment is only appropriate if "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,'" Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 64 (2d Cir. 2002) (summary judgment warranted where "facts and law will reasonably support only one conclusion"). Courts must "resolve all ambiguities and draw all reasonable inferences" against the moving party. Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and citations omitted). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("irrelevant or unnecessary" factual disputes cannot preclude summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."); Silipingo v. United States, No. 15-CV-17 (LEK) (CFH), 2017 WL 2973967, at *3 (N.D.N.Y. July 12, 2017) (if moving party has met its burden, nonmoving party must demonstrate more than "some metaphysical doubt as to the material facts"). The law and facts set forth by the parties support only one conclusion: that UKP failed to timely file either a formal or informal refund claim, and that we lack jurisdiction over UKP's refund claim.

6

## B. Subject Matter Jurisdiction

The doctrine of sovereign immunity directs that "no person may sue the federal government absent its consent to be sued." See Kirsh v. United States, 131 F. Supp. 2d 289, 391 (S.D.N.Y. 2000), aff'd, 258 F.3d 131 (2d Cir. 2001); see also United States v. Dalm, 494 U.S. 596, 608-10 (1990) (Congress specifies conditions under which immunity is waived); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (federal courts lack subject matter jurisdiction if conditions are not met); Magnone v. United States, 902 F.2d 192, 193 (2d Cir. 1990) (per curiam) (filing refund claim with IRS is a "prerequisite to jurisdiction"). Congress broadly consents to suits against the government by taxpayers seeking a refund of taxes allegedly "erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." See 28 U.S.C. § 1346; see also AmBase Corp. v. United States, 731 F.3d 109, 118 (2d Cir. 2013). Congress conditions this waiver of immunity upon taxpayers first "duly filing" their claims with the IRS within the time limits set by 26 U.S.C. § 6511. See 26 U.S.C. § 7422(a) (no suit "shall be maintained [for]…any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund…ha[s] been duly filed."); see also Rock v. United States, 279 F. Supp. 96, 98 (S.D.N.Y. 1968). A refund claim based on a capital loss carryback must be filed within "3 years [of] the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the [] net capital loss which results in such carryback."[3] 26 U.S.C. § 6511(d)(2)(A).

---

[3] As explained, infra, pursuant to the informal claim doctrine, a timely informal refund claim—later perfected by an untimely formal refund claim—can toll the statute of limitations. See United States v. Crocker, 563 F. Supp. 496, 499-500 (S.D.N.Y. 1983) (citing United States v. Kales, 314 U.S. 186 (1941)); see also Pennoni v. United States, 86 Fed.Cl. 351, 362, 364 (2009) (discussing timeliness requirements in Treasury Regulation § 301.6402-2 (2000)).

### 1. Informal Claim Doctrine

The parties agree that UKP did not file a timely formal refund claim because it failed to file amended 2005 through 2008 tax returns before the statute of limitations expired on September 12, 2012. See Gov't Mem. in Opp'n to Plaintiff Mot. for Summ. J. ("Gov't Mem. in Opp'n"), ECF No. 35-3, at 2; accord Plaintiff Mem., ECF No. 31, at 1. They also agree that UKP failed to file any documents conveying or orally request a refund for 2005 based on a loss carryback from 2008. See Gov't Mem., ECF No. 35-1, at 10-11 (citing Gov't Exs. 1, 5 n.3, 11, ECF No. 35-1). As a result, this case hinges on whether UKP duly filed an *informal* refund claim. See Kales, 314 U.S. 186; see also Plaintiff Mem., ECF No. 31, at 1. It did not.

A tax refund claim must "set forth its grounds in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [IRS] of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1)). But the informal claim doctrine allows a taxpayer to make a refund claim that, although it "does not satisfy all the requirements of the regulation[,] arrest[s] the running of the statute of limitations." BCS Financial Corp. v. United States, 118 F.3d 522, 524 (7th Cir. 1997); see also Pennoni v. United States, 86 Fed.Cl. 351, 361–63 (2009) (citing Computervision Corp. v. United States, 445 F.3d 1355, 1364 (Fed. Cir. 2006)).

Informal claims have "long been recognized as valid." AmBase, 731 F.3d at 119 (citations omitted). Federal courts have generally required that an informal claim: (1) provide notice to the IRS of the refund claim; (2) "describe the legal and factual basis for the refund"; and (3) include a written component. See Silipigno, 2017 WL 2973967, at *5 (citing New England Elec. Sys. v. United States, 32 Fed.Cl. 636, 641, appeal dismissed 56 F.3d 83 (Fed. Cir. 1995)); see also AmBase, 731 F.3d at 118. It must "apprise the IRS that a refund is sought and [] focus attention on the merits…so that an examination of the claim may be commenced."

8

AmBase Corp. v. United States, No. 3:8-CV-651 (WWE), 2011 WL 11038745, at *3 (D. Conn. Feb. 28, 2011), aff'd, 731 F.3d 109 (2d Cir. 2013) (internal quotation marks and citations omitted).

An informal refund claim must also "apprise[] the IRS that a refund is sought for certain years." Shields v. United States, No. 15-1081T, 2018 WL 473023, at *6 (Fed. Cl. Jan. 18, 2018) (quoting Pennoni, 86 Fed.Cl. at 362); see also PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States, 234 F.3d 873, 877 (5th Cir. 2000) (citing, inter alia, Kales, 314 U.S. at 194–95) (description of amount and years for which refund is sought requires "sufficient particularity"); Mills v. United States, 890 F.2d 1133, 1135 (11th Cir. 1989) (quoting Am. Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920 (Ct. Cl. 1963)) (it is "essential" for IRS to have "sufficient information as to [] tax and [] year"). Simply stated, a claim for one tax year "does not constitute a refund claim for a different tax year, even if the underlying legal and factual bases for the claims...are the same." Stelco Holding Co. v. United States, 42 Fed.Cl. 101, 114 (1998). Mere "[a]vailability of information [to the IRS] is not equivalent to notice that a claim is asserted based on that information." Union Pacific R. Co. v. United States, 382 F.2d 437, 445 (Ct. Cl. 1968). The IRS need not "weigh circumstantial evidence [] to determine whether a taxpayer [] seeks a [] refund." Kuehn v. United States, 480 F.2d 1319, 1132 (Ct. Cl. 1973) (internal quotation marks and citations omitted).

UKP admits that, prior to September 15, 2012 (when the statute of limitations expired) it did not file any documents that communicated that UKP sought to carry its 2008 losses back to the 2005 tax year, as was required by 26 U.S.C. § 1212(a)(1). Gov't Mem., ECF No. 35-1, at 10-11 (citing Gov't Exs. 1, 5 n.3, 11, ECF No. 35-1). Indeed, UKP explicitly sought to carry back its losses to 2007 alone. Nevertheless, UKP asks us to find that its Form 1139—coupled with

9

subsequent written and oral communications with the IRS—comprised a timely informal refund claim for the 2005 tax year. Because we agree with the Government that there are no material facts in dispute and that UKP failed to file a valid informal refund claim, the Government is entitled to judgment as a matter of law.

### i.  Form 1139 (Corporate Application for a Tentative Refund)

The law in this Circuit is clear that the mere filing of IRS Form 1139, by which corporate taxpayers apply for tentative capital loss carryback adjustments (or its equivalent Form 1045, which is used by individual taxpayers), does not constitute a formal or informal refund claim. See Kirch, 131 F. Supp. 2d at 391-92 ("an application under [26 U.S.C. § 6411(a)] shall not constitute a claim for credit or refund"), aff'd 258 F.3d 131 (2d Cir. 2001) (District Court lacked jurisdiction where formal claim was not filed within statutory period and because tentative tax refund and carryback adjustment request does not qualify as an informal refund claim); see also Silipingo, 2017 WL 2973967, at *4 ("[the] law and [] IRS's regulations could not be clearer in stating that Form 1045 shall not constitute a claim for credit or refund") (internal quotation marks and citations omitted); Treas. Reg. § 1.6411-1(b)(2). Form 1139 itself also expressly notes that "an application for a tentative refund is not treated as a claim for credit or refund." See IRS Form 1139 Instructions, available at https://www.irs.gov/pub/irs-pdf/i1139.pdf; see also Rock, 279 F. Supp. at 98-99 (differences between tentative carryback adjustment requests and refund claims are "not merely formal; they are substantive" as the statute, regulations, and IRS forms indicate); I.C.T.S. U.S.A., Inc. v. United States, No. 06-CV-6553 (JSR), 2007 WL 512791, at *2 (S.D.N.Y. Feb. 15, 2007) (in reviewing a Form 1139, the IRS is required to do "little more than check the math underlying the request," it is not required to fully review and

"formally resolve the refund request as it does with a formal request under Form 1120X.").

UKP's Form 1139 does not qualify as an informal refund claim.

### ii. UKP's Communications with the IRS

UKP argues that its phone calls and written correspondence with the IRS, combined with its Form 1139, put the IRS on "clear notice" that UKP sought to carry back losses from 2008 to 2005. See Plaintiff Mem., ECF No. 31, at 14. UKP also suggests that UKP's communications with the IRS are "an important part of the facts and circumstances here and demonstrate[] the IRS's knowledge that UKP intended to carry back the 2008 losses to obtain a refund." See Plaintiff Mem., ECF No. 31, at 15 n.7; see also Plaintiff Reply Mem., ECF No. 34, at 4; Plaintiff Mem. in Opp'n, ECF No. 37, at 10-11; Hrg Tr. (Aug. 11, 2017) at 11:4-19; Wall Indus., Inc. v. United States, 10 Cl.Ct. 82, 98 (1986) ("each case is to be decided on its own merits, paying [] attention to the combined effect of the unique facts and circumstances known to the government at the time"). The Government, on the other hand suggests that UKP's Form 1139 and surrounding facts and circumstances cannot be considered in evaluating UKP's alleged informal refund claim. See Gov't Reply, ECF No. 35-5, at 6, 8. Because UKP's Form 1139 and its communications with the IRS lack even the suggestion of an intent to carry back UKP's 2008 losses to 2005, as is required by § 1212(a)(1)(A), (C), we need not resolve this question or evaluate the remaining elements of the informal claim doctrine. See Shields, 2018 WL 473023, at *6 (quoting Pennoni, 86 Fed.Cl. at 362); see also Stelco, 42 Fed.Cl. at 114 (reference to taxable year was an "indispensable element[]" of "efficacious claim for refund").

Viewing the facts before us in favor of UKP, we find that no evidence that UKP communicated to a single IRS employee that it sought to carryback its losses to 2005 or sought a refund on its 2005 taxes. Cf New England Elec., 32 Fed.Cl. at 645-46 (courts must "examine the

facts and circumstances to discern whether the total mix of the written component and the particular facts indicate that the IRS knew or should have known [] taxpayer was asserting a right to a refund") (citations omitted); but see Kaffenberger v. United States, 314 F.3d 944, 956 (8th Cir. 2003) (subsequent IRS treatment, acquiescing in relevant part, omitted) (citing PALA, 234 F.3d at 877) (failure to specify year "does not necessarily defeat [] informal claim if other facts [are] sufficient to put [] IRS on notice"). It is clear to us that UKP's request for a refund for taxes paid in 2007 is simply not a request for a refund on taxes paid in 2005. See BCS, 118 F.3d at 524-25 ("to claim a refund for 1981 is not to claim a refund for 1984, even if the logic underlying the 1981 claim would suggest to a person knowledgeable about tax law and the affairs of the taxpayer that the taxpayer would also have a claim for 1984."); see also Kuehn, 202 Ct. Cl. at 477 (deduction for 1968 did not notify IRS of refund for 1962 and 1963, although IRS may have known it was likely given that net operating loss was not carried back to proper year); Stelco, 42 Fed.Cl. at 114-15 (no informal refund claim for 1992 where plaintiff only notified IRS of carryover losses and refunds for surrounding years).

Finally, UKP's assertion that the IRS knew or should have known, "*as a matter of law, that losses must be carried back three years to 2005*," Plaintiff Mem. in Opp'n, ECF No. 37, at 1 (emphasis in original), does nothing to save its defective informal claim. No one at the IRS "could have known…although one would have suspected, that [UKP] was going to seek a refund" for a year other than the year it communicated to the IRS. See BCS, 118 F.3d at 525. "It is not enough that the [IRS] ha[s] [] information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year []." Mills, 890 F.2d at 1135 (quoting Am. Radiator, 318 F.2d at 920). If this were not the case, § 6551(d)(2)(A)'s "three-year limitations period would be

porous." BCS, 118 F.3d at 525; see also VDO-ARGO Instruments, Inc. v. United States, 3 Cl.Ct. 359, 362 (1983), aff'd without op., 783 F.2d 453 (Fed. Cir. 1984)) (IRS "is not required to act as a detective and [] search for clues as to whether the plaintiff might desire tax refunds"). The IRS cannot be expected to "discover" or "hazard a guess" as to "the precise nature" of UKP's claim. See Stoller v. United States, 444 F.2d 1391, 1393 (5th Cir. 1971).

This is particularly true in the case of UKP, "a large business firm represented by sophisticated lawyers and accountants." See BCS, 118 F.3d at 526. But for UKP's failure to exercise appropriate care in understanding the nuances and deadlines applicable to its refund request, it "[w]ould have had no difficulty filing a timely claim" with all the essential elements. See id. A contrary conclusion would require the IRS to serve an unmanageable function—to "perform extensive investigations into the precise reasons and facts supporting every taxpayer's claim for refund," Stoller, 444 F.2d at 1393, or "ferret out any possible grounds for relief," Union Pacific, 389 F.2d 437. We decline to impose such a duty on the IRS.[4] UKP failed to file a timely informal refund claim sufficient to apprise the IRS of the nature of its claim and we therefore lack jurisdiction.

---

[4] Because UKP failed to duly file an informal refund claim, it is unnecessary to evaluate whether UKP later amended or "perfected" its claim with an untimely formal claim. But see Plaintiff Mem., ECF No. 31, at 4 (suggesting that UKP perfected informal refund claim by filing amended returns on August 27, 2013); see also PALA, 234 F.3d at 879 (informal claim doctrine is "predicated on an expectation that these formal deficiencies will at some point be corrected."); see also Kales, 314 U.S. at 194 ("[A] notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period."); Erikson v. United States, No. 13-CV-273 (KAW), 2013 WL 2299624, at *3 (N.D. Cal. May 24, 2013) ("Informal claims are typically recognized only in conjunction with later-filed formal 'perfecting' claims…failure to file a subsequent formal claim results in a failure to comply with the administrative exhaustion requirement") (citations omitted).

### iii. Mistakes Made By the IRS and Equitable Estoppel

UKP disclaims any reliance on the doctrine of equitable estoppel in this case. See Plaintiff Reply Mem. in Supp. of Summ. J. ("Plaintiff Reply Mem. in Supp."), ECF No. 34, at 6 n.5. Nevertheless, UKP asks the Court to find that IRS's misstatements instead form part of the relevant "facts and circumstances" that we must consider in evaluating its refund claim. Plaintiff Mem. in Opp'n, ECF No. 37, at 10; Plaintiff Reply Mem. in Supp., ECF No. 34, at 2, 5; see also United States v. Comm. Nat. Bank of Peoria, 874 F.2d 1165, 1171 (7th Cir. 1989) ("written component of an informal refund request need not contain magical words or contain every fact supporting that request. A taxpayer may rely on other documents, conversations or correspondence to fulfill [] notice obligations."). Though it seeks to do so by another name, UKP's assertions plainly invoke the application of equitable estoppel against the Government. See Hrg Tr. (Aug. 11, 2017) at 21:25 – 22:6 (Government explaining that while UKP agrees that the IRS cannot be estopped, estopping the IRS is "precisely what [UKP asks] this Court to do"). For example, UKP claims that it was "overtly mislead" and "aided" by the Government in not filing timely amended tax returns and in erroneously noting the wrong year on its Form 1139. See Plaintiff Mem. in Opp'n, ECF No. 37, at 10, 12; Letter of Feb. 5, 2015 from Linda Galler to Elaine Czyz, IRS Appeals Officer, ECF No. 35-1, at 47-49 ("Action or inaction by IRS employees led the Taxpayer to believe that its Form 1139 was adequate…[and rely] on explicit representations that [it] would be "sent through"). UKP also argues that but for the IRS not advising UKP of mistakes, and alerting UKP to the denial of its Form 1139 until after the statutory period had expired, UKP "would have been able to timely file amended returns." Plaintiff Mem., ECF No. 31, at 16. Because UKP could not have reasonably relied on the IRS' alleged misrepresentations and omissions, estoppel is unwarranted.

"Estoppel is an equitable doctrine 'invoked to avoid injustice in particular cases.'"
United States v. Litts, No. 3:99-CV-120 (JCH), 2000 WL 435484, at *3 (D. Conn. Feb. 28, 2000) (quoting Heckler v. Community Health Services of Crawford Cty, Inc., 476 U.S. 51 (1984)). While the Supreme Court has not "adopted a general rule that estoppel may never run against the government," McGinley v. United States, No. 12-CV-5471 (JAP), 2013 WL 5466634, at *7 (D.N.J. Sept. 30, 2013) (citing Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 422 (1990)), the Second Circuit has estopped the Government "only in very limited and unusual circumstances," United States v. Boccanfuso, 882 F.2d 666, 670 (2d Cir. 1989). A party seeking to estop the Government must establish that "the Government made a misrepresentation upon which the party reasonably relied to its detriment." Boccanfuso, 882 F.2d at 670 (citations omitted). That party must also show that the government's misrepresentations constituted affirmative misconduct. See Paley v. United States, No. 95-CV-5180 (JFK), 1998 WL 470512, at *4 (S.D.N.Y. Aug. 11, 1998) ("inaccurate information [provided] by a government employee does not constitute affirmative misconduct…even where [] the result seems unfair to the plaintiff") (citing Schweiker v. Hansen, 450 U.S. 785, 788-89 (1981)); see also Coppola v. United States, 938 F. Supp. 204, 208 (S.D.N.Y. 1996) (citations omitted). Whether we view them under the lens of equitable estoppel, or as factors relevant to the informal claim doctrine, the facts and circumstances at issue in this case do not save UKP. UKP knew or should have known the legal and statutory requirements for filing a carryback claim, as well as the applicable statute of limitations. UKP's reliance upon the misstatements of the IRS was therefore unreasonable and does not justify equitable relief.

### a. Reasonable Reliance

Reliance is only reasonable when the party "claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." In re Becker, 407 F.3d 89, 99 (2d Cir. 2005) (quoting Heckler, 467 U.S. at 59) (if party seeking estoppel "had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment."). UKP argues that the IRS "overtly misled" it in the following ways, resulting in UKP's failure to file a timely formal refund claim. (1) Officer Martin told UKP that it did not need to file amended returns to effectuate its carryback claim and that the IRS was submitting UKP's tentative refund claim for "processing"[5]; in doing so, the IRS failed to "adhere to" § 1212(a)(1)(A)'s 3-year carryback rule. Plaintiff Mem. in Opp'n, ECF No. 37, at 10. (2) The IRS failed to inform UKP that its Form 1139 had been denied and thus "fail[ed] to give UKP the opportunity to file amended returns" and a formal refund claim before the statute of limitations ran. Id. UKP asserts that it relied Officer Martin's suggestion that "it would take a long time for the IRS to process the Form 1139," due to the likelihood of a Congressional audit.[6] Plaintiff Mem., ECF No. 31, at 7; UKP 56.1 ¶ 21; Galler Aff. ¶ 13. (3) The IRS failed to follow its internal "rules and procedures for processing tentative refund claims" (i.e. the IRS did not process and respond to UKP's Form 1139 within 90 days, or reject it as untimely or for lack of reference to the proper carryback year). See Plaintiff Mem., ECF No. 31 at 18-19 (citing IRM § 21.5.9.4.2(2-3)).

---

[5] As mentioned, supra, the Government disputes that the IRS told UKP that it was not required to file amended 2005 returns, and explains that UKP's tentative refund request was not denied until after the statute of limitations had run. See Gov't Resp. to UKP 56.1, ECF No. 35-4 ¶¶ 22, 31; Martin Decl. ¶ 2.

[6] UKP also suggests in its Complaint that because it did not hear from the IRS for 22 months after Officer Martin sent through UKP's Form 1139 for processing, UKP "reasonably believed that the 2008 loss carryback had been applied to the 2007 year and that the excess credit from 2007 had been applied to taxes reflected on the tax return as due for 2008." Compl., ECF No. 1, ¶ 10.

Even construing these allegations in the light most favorable to UKP, this series of alleged mistakes by the IRS is insufficient to justify estoppel against the Government. It was UKP's responsibility to discover its error in filing Form 1139 after the 12-month deadline, to realize that it was required to carry back its 2008 losses first to 2005, and to determine that it was necessary to file amended returns before the statute of limitations expired. See Peoria, 874 F.2d at 1175 (suggesting that taxpayers may file conditional or protective claims or request extensions if the "nature or amount of their refund likely will remain unsettled until after the limitations period has expired"). Still, we address UKP's arguments in turn.

First, as UKP concedes, it put the "wrong year [on its Form 1139]; [it] made a mistake." Plaintiff Mem. in Opp'n, ECF No. 37, at 1. Possible misstatements by IRS officers as to the propriety of UKP's carryback claim and need to file timely amended returns do not absolve UKP of this error. See Ranciato v. United States, No. 300-CV-1024 (JCH), 2011 WL 58827, at *4 (D. Conn. Jan. 23, 2001) ("[M]ere failure to provide accurate information…will not give rise to estoppel") (internal quotation marks and citations omitted); cf Fredericks v. C.I.R., 126 F.3d 433, 443–44 (3d Cir. 1997) (subsequent IRS treatment, acquiescing in decision, omitted) (plaintiff acted reasonably in relying on, among other things, IRS' misrepresentation that a form was not in IRS file where agents acted within the scope of their authority); Belton v. Commissioner, 562 F. Supp. 30, 33 (D.D.C. 1982).

UKP's position that it was led astray by the IRS in its failure to file amended returns or correct its tentative carryback claim "runs afoul of the heavy general presumption that erroneous advice from government officials does not excuse compliance with the law." See DeSabato v. United States, 538 F. Supp. 2d 422, 428 (D. Mass. 2008) (taxpayer's reliance on IRS advice that tax could be paid "at any point of their choosing" after relevant deadline without penalty was

unreasonable) (citing Heckler, 467 U.S. at 63-65); see also Goldberg v. Weinberger, 546 F.2d 477, 480-81 (2d Cir. 1976) ("government could scarcely function if it were bound by its employees unauthorized representations."); Estate of Telesmanich v. C.I.R., 102 T.C.M. (CCH) 114, 2011 WL 3300334, at *3 (T.C. 2011) ("equitable estoppel is applied against the Commissioner with utmost caution and restraint") (internal quotation marks and citations omitted); Fredericks, 126 F.3d at 443-44 (subsequent IRS treatment, acquiescing in decision, omitted) (explaining that while IRS employees may "solicit or terminate agreements extending the statute of limitations…[they] lack the authority to waive statutory or regulatory filing requirements.") (citing cases); Miller v. United States, 949 F.2d 708, 712 (4th Cir. 1991) ("Government is not bound by the unauthorized or incorrect statements of its agents" and "courts expressly have prohibited the application of the doctrine of equitable estoppel in cases involving the IRS") (internal quotation marks and citations omitted).

UKP did not need the IRS's permission to file timely amended returns, nor was it required to wait to do so until it received a determination as to its Form 1139. At any time prior to September 15, 2012, UKP was free to file amended returns to protect its interests and effectuate a valid refund claim. See Gov't Reply, ECF No. 35-5, at 3; see also 26 U.S.C. 1.6411-1(b)(2) (taxpayers may "a claim for credit or refund…may be filed before, simultaneously with, or after the filing of the application for a tentative carryback adjustment."). UKP was also free to inquire of the IRS as to the status of its Form 1139. UKP did neither.

UKP's representation by experienced tax counsel and accountants throughout its dealings with the IRS further undercuts the application of equitable estoppel in this case. UKP "had the means by which with reasonable diligence [it] could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means." See Heckler, 467 U.S. at

59 n. 10, 65-66 (reliance on government employee who plaintiff "should have known[] was not in [] business of making policy" was unreasonable, in light of the fact that government agents must "stay within the lawful scope of their authority"); McGinley, 2013 WL 5466634, at *7 (finding reliance unreasonable where "Plaintiff was represented by counsel throughout [] dealings with the IRS…[and] counsel appeared to be relying exclusively on the advice of the IRS [regarding the tax code]"). In light of these advantages, UKP's lack of diligence and care in handling its refund request cannot be excused.

Moreover, "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." McGinely, 2013 WL 5466634, at *7 (citing Heckler, 467 U.S. at 63); see also Office of Pers. Mgmt., 496 U.S. at 420 ("the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do something or cause to be done what the law does not sanction or permit."); Matuszak v. C.I.R., 862 F.3d 192 at 195 (2d Cir. 2017) ("even erroneous legal advice [from IRS] cannot eliminate, by estoppel or otherwise, the jurisdictional requirement for a timely filed petition.") (internal quotation marks and citations omitted); Fredericks, 126 F.3d at 443-44 ("private party's reliance on governmental actions or omissions is not reasonable if such acts or omissions are contrary to law or beyond the agents' authority."). Similarly, "[c]ourts are more likely to apply estoppel when the government's conduct involves a misrepresentation of fact, rather than a misrepresentation of law." See Fredericks, 126 F.3d at 444 (citing, e.g., Miller, 500 F.2d 1007); see also Coppola, 938 F.Supp. at 209 (misrepresentation was an "incorrect statement of the applicable IRS regulations…a matter of law that Hochman could readily have determined himself by checking the applicable regulations"); Glassner v. I.R.S., No. 79-CV-390 (CSH), 1980 WL 1589, at *8 (S.D.N.Y. June 10, 1980) (for equitable estoppel to

apply against the government, "the requirement misrepresentation must be one of fact, not law");

Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971) (same); Elgart v. C.I.R, 72 T.C.M.

(CCH) 398, 1996 WL 460783, at *4 (T.C. 1996) ("erroneous legal advice rendered by employees

of the IRS generally is not binding on the Commissioner"); 170 A.L.R. Fed. 447 (2001) (courts

have concluded that equitable estoppel "does not apply in tax cases concerning

misrepresentations or mistakes of law."). The fact that the misstatements by the IRS were

misstatements and interpretations of law further undermines any suggestion of estoppel here.

See UKP 56.1 ¶ 22 (citing Galler Aff. ¶ 15). It was up to UKP, not the IRS, to adhere to the law

governing the three-year carryback rule, the 12-month limit on filing a Form 1139, and three-

year limitations period for filing amended returns, clearly set forth in 26 U.S.C. §§ 1212(a)(1),

6411(a), and 6551(d)(2)(A), respectively. UKP's cannot now estop the Government "from

making a correct determination of [its] liability." See Forrest v. C.I.R., 37 T.C.M. (CCH) 1033,

1978 WL 2927, at * (T.C. 1978) ("reliance on mistaken legal interpretations [] [of IRS] agents"

does not justify estoppel). This conclusion is further supported by the fact UKP received the

advice in question orally. See Heckler, 467 U.S. at 65 (suggesting that "estoppel cannot be

erected on the basis of the oral advice"); S.E.C. v. KPMG LLP, No. 3-CV-671 (DLC), 2013 WL

21976733, at *3 (S.D.N.Y. Aug. 20, 2003); In re: La Difference Restaurant, Inc., No. 83-CV-

3946 (JFK) (EJR), 1986 WL 8393 (S.D.N.Y. July 21, 1986) (agreement in writing "provides a

stronger base for recognizing estoppel"); McGinley, 2013 WL 5466634, at *8 ("Courts have

found reliance on oral advice to be problematic for litigants seeking to estop the government")

(citing, inter alia, Heckler, 467 U.S. at 65; Boccanfuso, 882 F.2d at 670).

Finally, UKP suggests that the "IRS's disregard [for] its own rules" resulted in UKP's

failure to timely file amended returns. Plaintiff Mem. in Opp'n, ECF No. 37, at 17. That the

IRS failed to comply with the processing, timeliness, and notice requirements set forth in the IRM in handling UKP's Form 1139 and providing advice to UKP's attorneys is of no consequence. IRM provisions "do[] not have the force of law." See Eaglehawk Carbon, Inc. v. United States, 122 Fed.Cl. 209, 221 (2015); see also United States v. Horne, 714 F.2d 206, 207 (1st Cir. 1983) (citing Einhorn v. DeWitt, 618 F.2d 347, 350 (5th Cir. 1980)). Nor do they bind the IRS or create actionable rights for taxpayers. See Reich v. Manganas, 70 F.3d 434, 437 (6th Cir. 1996) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981)) ("Internal operating manuals…do not carry the force of law, bind the agency, or confer rights upon the regulated entity"); see also Boccanfuso, 882 F.2d at 671 ("violation of any agency-imposed regulation does not bar enforcement of [statute]"); Harper Int'l Corp. v. United States, 120 Fed.Cl. 66, 72 (2015) ("although the IRS made a procedural mistake, that fact does not relieve the taxpayer of filing a timely protest"); Fargo v. C.I.R., 477 F.3d 706, 712-13 (9th Cir. 2006). Regardless, the onus was on UKP, not the IRS, to understand the law and file timely amended returns before the statute of limitations expired on September 15, 2012.

The IRS's conduct surrounding UKP's carryback and refund request was certainly "less than exemplary." See Boccanfuso, 882 F.2d at 670. It is unfortunate that professionals at the IRS, who are specifically charged with helping taxpayers navigate our complex and confusing tax code, failed to recognize the errors in UKP's filings or alert UKP to them. But "[i]t ignores reality to expect that the Government will be able to 'secure perfect performance from its hundreds of thousands of employees scattered throughout the continent.'" See Office of Pers. Mgmt., 496 U.S. at 433 (citations omitted). Our disappointment in the IRS does not change the fact that UKP was cavalier in its reliance upon the misstatements of the IRS personnel, and its failure to conduct independent legal due diligence. See Forrest, 37 T.C.M. (CCH) 1033 (where

petitioner could have "consulted someone highly informed with respect to tax law" to protect its interests, failure by the IRS to "inform [] taxpayer during the course of numerous conferences of the opportunity afforded by the statute to file a return in such a manner as to legally pay a lesser tax," did not as a matter of law amount to estoppel). In any event, the IRS's alleged misstatements as to the statute of limitations and carryback claim requirements, and its failure to comply with the IRM, do not amount to affirmative misconduct. See Gildor v. U.S. Postal Serv., 491 F. Supp. 2d 305, 309 (N.D.N.Y.), on reconsideration in part, 510 F. Supp. 2d 181 (N.D.N.Y. 2007) ("plaintiff must show affirmative misconduct going beyond inadvertent misrepresentation" to estop government); see also McGinley, 2013 WL 5466634, at *7 ("erroneous oral advice, mere negligence, mistakes of law, and simple omissions by government officials" are not affirmative misconduct") (internal quotation marks and citations omitted).

In reaching this conclusion, we are cognizant of the Supreme Court's warning that permitting estoppel against the Government in cases like this might result in the untenable loss of valuable advice and public informational programs, a loss that would be felt most not by large corporates like UKP, but by "those of limited means, who can least afford the alternative of private advice." See Office of Pers. Mgmt., 496 U.S. at 433. For these reasons, we decline to hold the Government responsible for the mistakes and misjudgment of UKP. The responsibility begins and ends with the taxpayer.

## CONCLUSION

The Government has satisfied the Court that there are no issues of material fact to be tried, and that it is entitled to judgment as a matter of law. While we are sympathetic to the financial impact that this holding has on UKP, it is clear to us that UKP failed to make a valid formal or informal refund claim prior to the expiration of the statute of limitations, and that in

any event, UKP's reliance on certain statements made by the IRS was unreasonable. As a result, the Government has not waived its sovereign immunity and we do not have jurisdiction over this unfortunate dispute. The Government's motion for summary judgment is granted. UKP's cross-motion is dismissed.

SO ORDERED:

s/ RJD

Dated: April 6, 2018
Brooklyn, New York

Raymond J. Dearie
United States District Judge